**IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF OHIO, EASTERN DIVISION**

| | |
|---|---|
| **Shanda Bolin,**<br>on behalf of herself and all other plaintiffs<br>similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>**MAPLEBEAR, INC. D/B/A INSTACART AND<br>"DOES" 1 THROUGH 100, INCLUSIVE,**<br><br>Defendants. | **No:**<br><br>**District Judge**<br><br>Magistrate Judge<br><br>_**JURY DEMAND**_<br><br>**CLASS AND COLLECTIVE<br>ACTION COMPLAINT** |

## COMPLAINT

NOW COMES Plaintiff, Shanda Bolin, on behalf of herself and all other Plaintiffs

similarly situated, by and through her attorney, Michael L. Fradin, and for her Complaint

against Defendants, **MAPLEBEAR, INC. D/B/A INSTACART AND "DOES" 1 THROUGH 100,**

**INCLUSIVE,** states as follows:

## I.     NATURE OF ACTION

1.     This action is brought under the Fair Labor Standards Act, 29 U.S.C.

§201, et seq., the Ohio Minimum Fair Wage Standards Act (OMFWSA), Ohio

Deceptive Trade Practices Act, and Ohio Common Law.

## II.     JURISDICTION AND VENUE

2.     This Court has federal question jurisdiction over this action pursuant to

28 U.S.C. § 1331 and section 16(b) of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C.

§216(b).

3.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' Ohio wage and hour and associated claims because the claims originate from a common nucleus of operative fact.

4.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

    a.      <u>Complete Diversity</u>: As alleged herein, Instacart is a Delaware corporation with its principal place of business at 50 Beale Street, San Francisco, CA. Plaintiff is a resident of Ohio and the proposed class consists of thousands of workers in Ohio. This satisfies the requirement that all plaintiffs and all defendants are citizens of different states.

    b.      <u>Amount in Controversy Exceeds $75,000</u>: The amount in controversy in the underlying dispute exceeds $75,000. Plaintiffs believe there to be thousands of members of the proposed class. Plaintiffs allege that they and the proposed class have been regularly denied proper minimum wage and overtime during the class period. In addition to the non-productive time and overtime wages, Plaintiffs also seek expense reimbursement; restitution and disgorgement; various penalties; an order enjoining Instacart from continuing to engage in the alleged conduct described in the Complaint; and other further relief as the Court deems just and proper. Given these requests for relief, the amount in controversy far exceeds $75,000 in the aggregate, and this Court has jurisdiction.

### III.    THE PARTIES

5.      Plaintiff Bolin is a resident of Athens, Ohio. Defendants have continuously employed Bolin as a Shopper from approximately May, 2020 to the present. During the course of her employment by Defendants, Bolin incurred expenses related to her work, including vehicle maintenance, fuel, insurance, and other driving related expenses for which

she was not reimbursed. Bolin also worked in excess of forty hours per week but was not compensated at the required overtime wage rates. Bolin regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked.

6.      Defendant Instacart is a Delaware corporation with its principal place of business located at 50 Beale St. Suite #600 in San Francisco, California. Instacart maintains substantial ongoing business operations throughout the United States, including San Francisco County, and is in the business of providing online grocery shopping and delivery service.

7.      The true names and capacities of DOES 1 through 100, inclusive, are unknown to Plaintiffs who sue such Defendants by use of such fictitious names. Plaintiffs will amend this complaint to add the true names when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is legally responsible for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

## IV.    STATUTORY VIOLATIONS

**Collective Action Under the Fair Labor Standards Act**

8.      Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiff as an opt-in representative or collective action, on behalf of herself and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.*

**Ohio Minimum Wage Law**

9.      Pursuant to the Ohio Minimum Wage Law, Count II of this action is brought by Plaintiff to recover unpaid back wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count. The claims asserted by

Plaintiffs herein are proper for certification under Federal Rule of Civil Procedure 23.

**Unfair and Deceptive Business Practices**

10.     Pursuant to ORC 4165.01, *et seq*, Count III of this action is brought by Plaintiffs to recover damages available by law. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

**Tortious Interference with Prospective Economic Advantage**

11.     Pursuant to Ohio Common Law, Count IV of this action is brought by Plaintiff to recover damages available by law. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

**Conversion**

12.     Pursuant to Ohio Common Law, Count V of this action is brought by Plaintiff to recover damages available by law. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

**Fraud and Intentional Misrepresentation**

13.     Pursuant to Ohio Common Law, Count VI of this action is brought by Plaintiff to recover damages available by law. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count.

## V.    <u>INTRODUCTION</u>

14.     Shanda Bolin,  individually and on behalf of similarly situated individuals, ("Plaintiffs") bring this class action against   Defendants MAPLEBEAR, INC., doing business as INSTACART ("Instacart"), (collectively "Defendants"), and alleges, upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows: Plaintiff brings this action to obtain damages and restitution, as well as declaratory, injunctive, and other relief, individually and on behalf of the proposed class

defined below ("Class"), against Instacart, which Plaintiff contends misclassified them as independent contractors.

15.    Made simple, Instacart is a grocery shopping and delivery service company whose workers shop for groceries from various grocery stores and then delivers them to Instacart customers.

16.    Plaintiffs and putative class members worked or continue to work as personal shoppers, drivers, and delivery persons for Instacart (collectively "Shoppers"). Shoppers are dispatched through a mobile phone application to shop, purchase, and deliver groceries to customers at their homes and businesses.

17.    Instacart does not recognize itself as a grocery delivery service, instead calling itself a "technology company that offers a proprietary communications and logistics platform." In reality, its "platform" assigns customer orders to workers, such as Plaintiffs, just as any dispatcher would assign work orders. Instacart uses these tech-heavy buzzwords to brand itself as something other than what it really is – a grocery delivery service subject to the same employment laws as any other employer.

18.    In practice, Instacart controlled the "when," "where," and "how" of Plaintiffs' jobs. The work performed by Plaintiffs was within the usual course of Instacart's business of grocery delivery and Plaintiffs were completely dependent on the Instacart platform to perform grocery delivery work. Plaintiffs were not independently engaged in grocery delivery outside of their work for Instacart. Under the applicable test for employment under the federal Fair Labor Standards Act and the Ohio Minimum Wage Law, Shoppers are presumptive employees entitled to labor law protections such as minimum wage guarantees, overtime compensation, workers' compensation insurance coverage, payroll tax contributions, and other employee benefits. By misclassifying Shoppers as independent contractors, however, Instacart denied them these rights, shifting all risk to Shoppers and saving itself millions in overhead in the process.

19.    Defendants intentionally misrepresented to Plaintiffs that they were independent contractors and therefore not entitled to wages for non-productive time,

reimbursements for expenses incurred in relation to their employment, workers' compensation insurance benefits, and tax benefits enjoyed by employees.

20.     This action asserts causes of action under federal and Ohio state law for failure to pay minimum wage and overtime, failure to properly report pay, denial of reimbursements for business-related expenses, willful misclassification, nonpayment of gratuities, failure to indemnify for losses caused by Instacart's own negligence, deceptive trade practices, tortious interference with prospective economic advantage, and fraud/intentional misrepresentation.

21.     Plaintiffs assert claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, et seq., the Ohio Minimum Wage Law and Ohio Common Law on behalf of the following class of individuals:

> **All individuals who performed personal shopping, delivery services, or both for Instacart in the State of Ohio for the statutory period covered by this Complaint and any Subsequent Amendments.**

22.     Plaintiffs seek actual and/or compensatory damages, civil penalties, restitution, equitable relief, costs and expenses of litigation, including attorneys' fees, and all additional and further relief that may be available and that the Court may deem appropriate and just under all of the circumstances.

## VI.    FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

### Instacart's Business Model Deprived Plaintiffs of the Benefits and Protections of Employment

23.     Instacart provides grocery delivery services to customers in cities throughout the country via an on-demand dispatch system.

24.     Instacart offers customers the ability to purchase groceries from specified stores on a mobile phone application or over the Internet and have them delivered by "personal shoppers" within one or two hours.

25.     Instacart's website advertises that "Instacart delivers groceries in as little as an hour!"

26.     Instacart operates by hiring and employing an extensive workforce of individuals who perform the functions of shopping for and purchasing the groceries ordered by the customers and delivering said groceries to the customers. The shoppers' and drivers' services are fully integrated into Instacart's business, and without them, Instacart's business would not exist.

27.     However, at all relevant times, Defendants treated Plaintiffs like independent contractors to the detriment of Plaintiffs in various manners, including but not limited to, requiring Plaintiffs to use their own vehicle to make deliveries, pay for driving-related expenses, failing to provide liability insurance for the operation of Plaintiffs' motor vehicles, failing to provide workers' compensation insurance, and requiring Plaintiffs to pay increased tax rates mandatory for independent contractors.

28.     Additionally, Defendants required Shoppers to use their own smart phones and data from their personal cell phone service plans in order to receive and carry out work orders.

29.     Instacart voluntarily and knowingly misclassified Plaintiffs and other Instacart shoppers as independent contractors for the purpose of avoiding the significant responsibilities associated with the employer/employee relationship, including, *inter alia*, the payment of wages for non-productive time, expense reimbursements, provision of workers' compensation insurance, payment of state and federal taxes, and other benefits.

30.     At all relevant times, Defendants issued Plaintiffs a Form 1099, indicating Plaintiffs were independent contractors and were not Defendants' employees.

31.     At all times during their employment with Defendants, Plaintiffs were misclassified as independent contractors by Defendants, were in fact employees of Defendants, and suffered actual economic harm as a consequence of this misclassification.

**Instacart Extensively Controlled All Aspects of Plaintiffs' Jobs**

32.     Despite Instacart's explicit and implicit classification of Plaintiffs as independent contractors, Plaintiffs are in fact employees of Defendants. Plaintiffs are

required to follow a litany of detailed requirements imposed on them by Instacart and are graded and subject to termination based on their failure to adhere to these requirements.

33.    At all relevant times, Instacart exerted control over Plaintiffs in a manner consistent with an employer-employee relationship, including but not limited to, generating the work orders for Plaintiffs; controlling their wages; enforcing behavioral codes of conduct; controlling the means, manner, and method by which they perform they work; and controlling the conditions of employment. Instacart directed Plaintiffs precisely when and where they were to collect and deliver groceries to Instacart customers, how they were to interact with Instacart customers, and had the right to terminate them from Instacart's employment at Instacart's discretion.

34.    When working for Instacart, Shoppers were expected to hold themselves out as Instacart employees were provided lanyards with the Instacart logo to identify them to customers as Instacart Shoppers.

35.    Instacart trained and directed Plaintiffs on how to evaluate and select produce and how to bag items.

36.    Plaintiffs were to follow Instacart protocol if an item was unavailable. The Instacart App directed Shoppers to choose specific replacement items. If these items were unavailable, Instacart directed Plaintiffs to try to match the quantity ordered and prioritize health features. For example, if the requested but unavailable item was gluten-free, Plaintiffs were directed to purchase a gluten-free substitute.

37.    Instacart also controlled how Shoppers were to interact with customers. Instacart provided instructions on what Shoppers were to say when leaving voicemails for customers, what to say when on the phone with a customer to add a substitute item for an unavailable item, and what to say when delivering the groceries to the customer.

38.    Additionally, Shoppers were required to accept (or "acknowledge") every job (also called a "batch") that Instacart sent to their smartphone within a set time. If Plaintiffs

failed, for whatever reason, to accept even a single batch, Plaintiffs would receive no compensation for the rest of the pre-determined shift regardless of whether they were one minute or six hours into their shift. After acknowledging an order, Plaintiffs were required to start picking the groceries within a certain timeframe. If Plaintiffs repeatedly did not meet Instacart's expectations as to the time within which to commence picking, Instacart would schedule them for fewer shifts or not at all.

### Instacart Dictated All the Particulars
### of Plaintiffs' Work Through its Mobile Application

39.     At all relevant times, Plaintiffs were assigned their work by Instacart via a mobile phone application ("Instacart App") on a daily basis. The only way to perform any work for Instacart was through the Instacart App, which could only be used as determined by Instacart.

40.     As a result, Plaintiffs did not know where they were to be assigned to work, the type of deliveries they were to be performing, or the length of time any given assignment was expected to require until they received Instacart's work order notification. Plaintiffs were not permitted to collect the materials from locations of their choosing or deliver them at a time or a price negotiated by Plaintiffs.

41.     Instacart monitored and managed Plaintiffs' job performance down to the minute. Plaintiffs were required to notify Instacart, by way of the Instacart App, when they were starting to shop for an order, when the purchase was complete, when they were starting the delivery process, and when delivery was complete.

42.     Instacart used a letter or number grading system to evaluate Plaintiffs and all other Shoppers. The grades or scores were comprised of at least three components: reliability, accuracy, and speed. Shoppers were expected to have a "picking speed" within a set time range of "minutes per item." Instacart also told Shoppers that they were expected to have a certain minimum accuracy score and minimum reliability score.

43.     Instacart monitored and tracked the location and speed of Shoppers while they were completing orders and communicated directly with Shoppers via text message or phone call if they deviated from the enumerated protocols or timing requirements to inquire why they were running late, even if only by a minute or two. Instacart also sent text messages requesting that Shoppers provide minute-by-minute updates on the delivery status of their assigned orders.

44.     If Shoppers did not comply with Instacart's work requirements, they were subject to reduced effective pay, discipline, and "deactivation" - a tech industry euphemism for being fired. If Shoppers' grades/scores were outside Instacart's expectations, Instacart would assign them fewer or smaller batches and fewer or shorter shifts.

45.     Instacart communicated its expectations, protocols, and rules to Plaintiffs and other Shoppers via regular e-newsletters, communications through the Shopper App, training manuals, videos, emails, and phone calls. Instacart managers also sent text messages to Shoppers about their performance of deliveries, messages about their shifts, directions on how to shop, and other managerial issues.

46.     At times, the Instacart App would suffer from systemic malfunctions in which the App would crash, freeze, glitch, or in some way prevent Shoppers from continuing their work.

47.     When the App malfunctioned, it would take as long as five minutes to restart, reset, or reinstall the App to bring it back to full functionality.

48.     For the duration of the App's malfunction, Shoppers were unable to continue their shift. In fact, Instacart penalized Shoppers for the delay they suffered due to Instacart's malfunctioning App through negative performance evaluations, disciplinary action, termination, and decreased wages.

49.     Upon information and belief, Instacart knew that the App malfunctions were widespread and systemic, rather than isolated to a particular shopper. Nevertheless,

Instacart never adequately fixed the problem. Instead, Instacart's lack of ordinary care in

maintain its platform directly resulted economic loss to Plaintiffs and other Shoppers.

**Instacart Controlled Shoppers' Wages and Tips**

50.     Instacart exerted sole control over Plaintiffs' wages. At all relevant times,

Plaintiffs were paid in a manner completely dependent on the nature of the deliveries they

made, including the quantity of items Plaintiffs were required to collect and deliver under

each individual work order.

51.     On multiple occasions throughout the relevant period, Instacart unilaterally

modified the compensation structure applicable to Shoppers without any negotiation or

consent on the part of the Shoppers.

52.     At all relevant times, Instacart paid Plaintiffs via direct deposit. A wage

statement was provided on the Instacart App. However, at all relevant times, the Instacart

App omitted the Plaintiffs' hours worked or the hourly rate paid. Nor did the App provide

Plaintiffs information as to their piece rate compensation (i.e., per-batch commission) or the

number of piece rate units earned. Plaintiffs had no means of verifying they were being paid

correctly.

53.     At all relevant times, Instacart customers were able to tip their Shopper via

the Instacart App.

54.     Instacart credited customer tips against wages in order to supplement

Shoppers' wages. Since customers included gratuity when they made the order, Instacart

used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay

for that order. As a result, some portion of customer gratuity was used by Instacart to pay

Shoppers their wages for each order. By preventing Shoppers from seeing how much the

customer paid for their order and by withholding accurate wage statements, Instacart

deprived them of their ability to combat the unlawful tip crediting practice.

**Instacart Controlled When and How Long Plaintiffs Worked**

55.     At all relevant times, Plaintiffs were required to provide windows of availability to Instacart on a weekly basis. Plaintiffs could list availability for shifts of up to twelve hours in duration. Instacart then assigned Plaintiffs a schedule of shifts for the upcoming week.

56.     At the start of an assigned shift, Plaintiffs were required to report to a certain territory specified by the App. Instacart would not assign batches to Plaintiffs until they were within their territory; however, there was no guarantee that they would be assigned any batches even if they were within their territory. Plaintiffs were not paid for the time that they were on shift but had not yet been assigned a batch.

57.     If Shoppers did not report to their territory at the start of an assigned shift, reported late to a shift, or cancelled a shift within twenty-four hours, Instacart lowered the "reliability score" component of their Shopper Grade. A low reliability score resulted in being assigned less or shorter shifts or being deactivated.

**Instacart Denied Plaintiffs Minimum Wage and Overtime**

58.     At all relevant times, Plaintiffs were paid in a manner completely dependent on the nature of the deliveries they made, including the quantity of items Plaintiffs were required to collect and deliver under each individual work order.

59.     Plaintiffs were required to make themselves available to perform work within a predetermined range of time each day but were not compensated in a manner that guaranteed they were compensated at or above the applicable minimum wage during those hours. During non-productive time, or time during which Plaintiffs were required to be on shift in a specific location but were not yet assigned a batch, Plaintiffs were not compensated in any manner whatsoever.

60.     Shoppers could sign up for shifts of up to twelve hours in duration. If, at the end of a shift, Instacart was experiencing high volumes of orders, Shoppers could extend their shifts, in some cases up to fifteen hours. Plaintiffs sometimes worked up to sixty or

more hours per week. Despite these long hours, Plaintiffs were not compensated at the required overtime rates.

61. At no time during Plaintiffs' employment did Defendants provide Plaintiffs with any written or electronic wage statement showing hours worked, gross and net wages, hourly rates, or federal or state deductions.

62. Plaintiffs were paid on a commission basis without regard to the hours worked above forty hours in a given week.

**Instacart Failed to Reimburse Shoppers for Business-Related Expenses**

63. At all relevant times, Plaintiffs were required to bear many of the expenses of their employment, including expenses for their vehicles, gas, and other expenses. At times, these expenses caused Plaintiffs wages to fall below minimum wage.

64. At all relevant times, Defendants required Plaintiffs to use and maintain insured and licensed vehicles as a condition of their work. Plaintiffs were required to pay all expenses related to the use and maintenance of their vehicles, including expenses related to liability insurance, fuel, routine maintenance, and the upkeep of their vehicles' appearance. Shoppers often incurred costs related to parking, such as parking meter payments and parking tickets, which were necessitated by Defendants' directives to its drivers. Defendants also required Shoppers to use their own smart phones and data from their personal cell phone service plans as a condition of their work in order to receive and carry out work orders. Defendants did not reimburse Plaintiff for these work-related expenses in any manner.

65. At all relevant times, Defendants did not provide Plaintiffs with workers' compensation insurance. Shoppers injured in the course and scope of their employment with Defendants were left to rely on either their own private medical insurance or make direct payments for medical treatment rendered as a result of industrial injuries. They were also subject to denial of coverage by their private insurance because they were injured on the job. Shoppers were additionally

ineligible for workers' compensation disability benefits if they were physically unable to perform their work as a consequence of industrial injuries.

66.    At all relevant times, Defendants paid taxes in a manner consistent with Plaintiffs' misclassification as independent contractors. As a consequence, Plaintiffs were required to pay increased state and federal taxes at the rate of independent contractors despite the fact they were an employee.

**Instacart's Willful and Reckless Violation of Labor Laws**

67.    Instacart willfully violated the Fair Labor Standards Act and Ohio state employment laws. Instacart knew that Shoppers were properly treated as employees but chose to misclassify them as independent contractors. Instacart's motivation in misclassifying Plaintiffs and the other Shoppers as independent contractors was to avoid the additional costs and financial responsibilities associated with an employer/employee relationship, including, inter alia, the payment of minimum wage and overtime, the payment of wages for non-productive time, expense reimbursements, payment of state and federal taxes, and other benefits.

68.    Instacart also specifically knew or recklessly disregarded whether it was violating federal and Ohio state labor laws by not paying Shoppers minimum wage for all hours worked and overtime for hours over 40 worked in a week. Instacart knew of the Labor Code, the financial obligations it imposes on employers, and its applicability to Instacart with respect to Plaintiff and other Shoppers. Again, it was Instacart's knowledge of these financial obligations and its desire to circumvent them that motivated Instacart to willfully misclassify Plaintiffs and the other Shoppers.

69.    Instacart knew Shoppers were working more than forty hours a week and that Instacart was not paying Shoppers overtime wages. Instacart calculated and tracked the average hourly wage it paid Shoppers and could easily see when Shoppers' effective hourly rate fell below the applicable minimum wage. Instacart also knew that there were hours during Shoppers' shifts when they were not assigned orders and that they were not paid for

those hours.

70.     As alleged herein, Instacart maintained extensive and pervasive control over Plaintiffs and the other Shoppers' conduct, means and manner of work, appearance, actions, wages, and hours. Instacart had detailed knowledge of and control over how  many hours Shoppers were working on a daily and weekly basis, including when Shoppers worked over forty hours per week, and how many orders Shoppers were assigned and when. Instacart's system is designed to assign shifts up to ten hours in duration, which could be extended to twelve hours but only allowed for a single twenty-minute break over the course of twenty-four hours regardless of the length of the shift.

71.     Instacart also knew how much it was paying Plaintiffs and that its method of compensation (i.e., on a piece rate/commission basis) gave no consideration to whether Plaintiffs worked more than 40 hours in a given week or whether there were hours during Plaintiffs' shifts when they were not assigned orders. Indeed, it was Instacart's practice to deny that overtime wages were due to be paid to Plaintiffs for work in excess of forty hours per week and to deny that any wages were due to be paid for non-productive hours even though Instacart knew that, under any set of circumstances or facts, Plaintiffs were entitled to be paid at least minimum wage for each hour that they worked. Instacart has falsely denied and refused and continues to deny falsely and refuse payment for purposes of securing a material economic benefit to itself and with the intent to annoy, harass, oppress, hinder, and defraud Plaintiffs and other Shoppers.

72.     Further compounding its willful actions is the fact that Instacart never provided Plaintiffs with any written or electronic wage statement that showed their hours worked, hourly rates, piece rate information, and federal and state deductions or wage statements that accurately reported their gross and net wages.

73.     Instacart chose to classify Shoppers as independent contractors to save money.

74.     On November 19, 2013, Instacart founder and CEO Apoorva Mehta stated the following:

"The reason why Instacart is extremely disruptive, is because we don't have any physical infrastructure. We have not built any warehouses. We don't have a fleet of trucks that we own or lease. And we don't hold any inventory. We have made grocery delivery possible with just software. And the way we've been able to do that is leveraging mobile based crowdsourcing. This has allowed us to operate at extremely low fixed costs, get started with very low capital expenditure, and it has allowed us to expand to new cities extremely quickly."[1]

75.     Plaintiffs believe internal Instacart documents exist confirming that Instacart knew the shoppers were supposed to be treated as employees and that Instacart knew Shoppers could not make up to the promised wages advertised online. For example, Plaintiffs understand that Instacart held monthly all-hands meetings, led by CEO Apoorva Mehta. Plaintiffs understand that these meetings were live-streamed over the Internet so corporate employees who were not physically in attendance could watch and that PowerPoint presentations accompanied the meetings.

76.     During one of these meetings held in or around August 2015, Mr. Mehta addressed the issue of shopper misclassification, the conversion of in-store shoppers to employees, and the fact that other shoppers remained classified as independent contractors.

77.     In June 2016, the IRS issued a determination finding an Instacart Shopper to be an employee for federal employment tax purposes for work performed during 2015 and state labor commissions in both New York and Colorado have issued findings that Instacart Shoppers are properly classified as "employees."

78.     In misclassifying Plaintiffs and other Shoppers as independent contractors and failing to pay Plaintiffs wages and compensation due to them, as well as by committing the numerous other violations detailed in this complaint, Defendants, by and through their officers, directors or managing agents, acted with malice, oppression and or conscious

disregard for the statutory or other rights of Plaintiffs, and committed fraud by willfully and wrongly treating Plaintiffs as an independent contractor and not an employee.

79. Plaintiffs brings the following claims on behalf of the following class ("the Class" or "the Ohio Class"):

**All individuals who performed personal shopping, delivery services, or both for Instacart in the State of Ohio during the Statutory Period Covered by this Complaint.**

## COUNT I
## OHIO COLLECTIVE ACTION
## VIOLATION OF FAIR LABOR STANDARDS ACT

80. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

81. Plaintiffs bring this cause of action on behalf of themselves and all other Instacart Shoppers who have worked for or on behalf of one or more of the Defendants in the State of Ohio any time during the three-year period prior to filing this Complaint.

82. Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiffs and other Instacart Shoppers are similarly situated in that they are all subject to Instacart's common plan or practice of classifying Shoppers as independent contractors, not paying them overtime for all hours worked beyond forty (40) in a given week, and not ensuring that they receive at least the federal minimum wage for all hours worked.

83. At all relevant times, Defendants, and each of them, have been the employers of Plaintiffs, their employees, and have been engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA. Defendant's annual operating revenues exceed $500,000.

84. Plaintiff Bolin consents to sue for violations of the FLSA pursuant to 29 U.S.C. § 216(b) and 256. The written consent form for Plaintiff Bolin is attached hereto

as Exhibit 1.

85. The FLSA, 29 U.S.C. §§ 201 *et seq.*, requires employers, such as Defendants, to compensate their non-exempt employees, such as Plaintiffs, at a rate of not less than the minimum wage for all hours worked. The FLSA further requires employers to compensate employees at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week. In addition, the FLSA requires employers to record, report, and preserve records of hours worked by employees.

86. Defendants, and each of them, pursuant to uniform policies and practices, failed to compensate Plaintiffs at a rate not less than the minimum wage for all hours worked and failed to compensate Plaintiffs at or above one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a single week, in violation of the FLSA, including 29 U.S.C. § 207(a)(1) and § 215(a).

87. The FLSA mandates that an employee's wages must be "free and clear" of "kickbacks," and requires employers to reimburse employees for such expenses, which are for the benefit of the employer, when failing to do so would cause their wages to drop below the federal minimum wage.

88. Plaintiffs were required to bear many expenses related to their employment that were for the benefit of Defendants, including expenses related to the maintenance of their vehicles, gas, cell phone bills, and other expenses. Defendants did not reimburse Plaintiffs for these expenses. At times, these expenses caused Plaintiffs' wages to fall below minimum wage.

89. Defendants, and each of them, have failed to record, report, or preserve records of hours worked by Plaintiffs sufficient to determine wages, hours, and other conditions and practices of employment, in violation of the FLSA, including 29 U.S.C. § 211(c) and § 215(a).

90. As alleged above, Instacart credited customer tips against wages in order to

supplement Shoppers' wages. Since customers included gratuity when they made the order, Instacart used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay for that order. As a result, some portion of customer gratuity was used by Instacart to pay Shoppers their wages for each order.

91.     Defendants' practice of crediting tips against wages constitutes an illegal tip pool in violation of the FLSA, including 29 U.S.C. § 203(m).

92.     The conduct described herein constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

93.     Plaintiffs seek recovery of attorneys' fees and costs to be paid by Defendants, as provided under 29 U.S.C. § 216(b).

94.     Plaintiffs have incurred economic damages as a direct and proximate consequence of the acts of Defendants alleged herein.  Plaintiffs seek damages in the amount of their respective unpaid compensation, unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and other such legal and equitable relief as the Court deems just and proper.

95.     This claim is brought on behalf of a class of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. § 216(b).

96.     Plaintiffs reserve the right to amend this Class definition if discovery or further investigation demonstrate that the Class should be expanded or otherwise modified.

97.     Plaintiffs and other members of the Class have uniformly been deprived reimbursement of their necessary business expenditures and minimum and overtime wages.

98.     The members of the Class are so numerous that joinder of all members would be impracticable.

99.     There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

    a)   Whether Class members have been required to follow uniform procedures

and policies regarding their work for Instacart;

    b)  Whether the work performed by Class members—providing grocery shopping and delivery service to customers—is within Instacart's usual course of business, and whether such service is fully integrated into Instacart's business;

    c)  Whether Plaintiff was independently engaged in the business of grocery delivery outside of their work for Instacart;

    d)  Whether Defendants failed to pay Plaintiffs for all hours of work performed in violation of Ohio law;

    e)  Whether Defendants failed to reimburse Plaintiffs for expenses incurred during the course of their employment;

    f)  Whether Defendants' conduct violates the Fair Labor Standards Act and Ohio state employment law;

    g)  Whether Defendants' conduct violates Ohio Compiled Statutes;

    h)  Whether Defendants' conduct otherwise violates Ohio law; and

    i)  Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief or other damages and relief, and, if so, the amount and nature of such relief.

100.   Plaintiffs are members of the Class who suffered damages as a result of Defendant's conduct and actions alleged herein.

101.   Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interests antagonistic to those of the Class and is not subject to any unique defenses.

102.   Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class and has retained attorneys experienced in class action and complex litigation.

103.   The questions of law and fact common to the members of the Class

predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

104. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

    a) It is economically impractical for members of the Class to prosecute individual actions;

    b) The Class is readily definable;

    c) Prosecution as a class action will eliminate the possibility of repetitious litigation; and

    d) A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

105. Plaintiff does not anticipate any difficulty in the management of this litigation.

## COUNT II

### VIOLATION OF ARTICLE II, § 34A OF THE OHIO CONSTITUTION AND THE OHIO MFWSA - (On Behalf of herself and the Class)

106. Plaintiffs re-allege and incorporate the previous paragraphs of this Complaint as if fully set forth in this cause of action.

107. Plaintiffs bring this cause of action on behalf of themselves and all other Instacart Shoppers who have worked for or on behalf of one or more of the Defendants in the State of Ohio any time during the three-year period prior to filing this Complaint.

108. The Ohio MFWSA, § 4111.01 (A) defines "wage" as including the reasonable cost to the employer of furnishing "facilities," in language which tracks the FLSA, 203(m) definition of "wage." *However,* the cost of furnishing "facilities" which are primarily for the benefit of the employer – such as uniforms - are not

"reasonable" and may not be included in wages. *See* 29 CFR Sect. 531.3(d)(1) and

(2); *Mitchell v. Abercrombie & Fitch, Co,* 428 F.Supp.2d 725, 732 (S.D.Ohio, 2006),

*affirmed,* 225 Fed.Appx. 362, 2007 WL 930398 (Courts have uniformly held that

Ohio's wage and hour law should be interpreted in accordance with the FLSA) (citing

*Douglas v. Argo-Tech Corp.,* 113 F.3d 67 n. 2 (6th Cir.1997)(noting that Ohio's wage

and hour law "parallels the FLSA" and approaching the Ohio law and the FLSA in a

"unitary fashion" is appropriate).

109.    Defendants violated the minimum wage provisions of the Ohio

MFWSA, § 4111.01 (A), by requiring its Shoppers to incur expenses that dropped

their wages below minimum wage required by the Ohio constitution in one or more

work weeks.

110.    As also alleged above, Plaintiffs and members of the Ohio Class were

consistently and uniformly not paid the applicable minimum wage or overtime pay for

all the work they performed during the course of their employment with Defendants.

Defendants' unlawful conduct was neither inadvertent, nor *de minimis*, but

widespread, repeated and part of a pattern and practice of conduct affecting Ohio

Plaintiffs and all members of the Ohio Class.

111.    As a result of the foregoing, Plaintiffs and the members of the Ohio

Class have been damaged in an amount to be determined at trial. The Ohio

Constitution contains a three-year statute of limitations regardless of whether the

violation was willful.  Therefore, the Ohio Plaintiffs and members of the Ohio Class

are entitled to treble damages and attorneys' fees and costs and other relief, including

penalties and interest, for the three-year statute of limitations as this Court deems just

and appropriate.

**COUNT III**

## DECEPTIVE TRADE PRACTICES
### (On Behalf of herself and the Class)

112.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein. Instacart has engaged in unfair and deceptive business practices as set forth above. By engaging in the above-described acts and practices, Instacart has committed one or more deceptive practice within the meaning of ORC 4165.02 *et seq*. These acts and practices constitute a continuing and ongoing unfair and deceptive business practice and justify an award of actual damages, the issuance of an injunction, and other equitable relief pursuant to ORC 4165.02.

113.    Instacart's acts and practices, as described above, constitute deceptive trade practices within the meaning of ORC 4165.02.

114.    As described herein, Instacart failed to keep accurate records of the hours worked by Plaintiff. At all relevant times, Instacart failed to provide Plaintiffs with accurate records of pay indicating the hours worked and/or the wages paid for the hours worked. In addition, based on fraudulent reporting of hours worked and wages paid, inaccurate information regarding state and federal deductions were provided to Plaintiffs.

115.    Additionally, as described herein, Instacart represented to Plaintiffs that they, alone, were responsible for the performance of their work and that they, alone, determined the method, details, and means of performing their work. These representations were false.

116.    Instacart also represented Plaintiffs were independent contractors not entitled to the compensation and reimbursements set forth above, which was, in fact, also false.

117.    Instacart knew the falsehood of these representations and intended to, and did, induce Plaintiffs' reliance thereupon. Plaintiffs relied upon the truth of the representations, causing economic harm.

118.    Plaintiffs suffered concrete and identifiable economic injuries as a consequence of Instacart's misleading and fraudulent conduct, including but not limited to

unpaid wages including overtime.

119.    Instacart's acts and practices, as described above, constitute deceptive business practices within the meaning of ORC 4165.02. Such acts and practices were against established public policy and were pursued to attain an unjustified monetary advantage for Instacart by creating personal disadvantage and hardship to its employees.

120.    Instacart's conduct does not benefit workers or competition. Indeed, the injury to Plaintiff as a result of Instacart's conduct is far greater than any alleged countervailing benefit. Plaintiff could not have reasonably avoided the injury he suffered.

121.    The gravity of the consequences of Instacart's conduct as described above outweighs any justification, motive, or reason and, therefore, is immoral, unethical, oppressive, unscrupulous, and is contrary to the public welfare since it transgresses civil statutes of the State of Ohio designed to protect workers from exploitation.

122.    Plaintiffs have suffered injury in fact and lost money and/or property as a result of Instacart's unfair business acts and practices by, inter alia, being deprived of compensation for all hours worked including overtime and being paid at a rate substantially less than the promised amount that Instacart advertised they could make.

123.    By and through its unfair and deceptive business practices and acts described herein, Instacart has obtained valuable services from Plaintiffs and have deprived Plaintiffs of valuable rights and benefits guaranteed by law, all to their detriment. Plaintiffs seek an order of the Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under Ohio's Deceptive Trade Practices Act.

## COUNT IV

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
**(On Behalf of herself and the Class)**

124.    Plaintiffs hereby reallege and incorporate by reference all paragraphs above as

if set forth in detail herein.

125. As alleged above, Instacart credited customer tips against wages by lowering wages for batches in which customers paid a higher gratuity.

126. In effect, Instacart used customer tips in order to help pay Plaintiffs' wages.

127. Instacart intentionally and maliciously misappropriated gratuities in order to pay Plaintiffs' wages even though Instacart maintained that 100 percent of customer tips went directly to shoppers. Based on this representation, Instacart knew that customers would believe their tips were being given to Shoppers in addition to wages, not to supplement wages entirely.

128. Instacart misled customers as to the amount of gratuity actually received by Shoppers in order to continue profiting from customers' ignorance.

129. At the time a customer entered the payment screen in the Instacart App, an economic relationship had formed between the customer and Shopper.

130. At the time when the customer entered the payment screen, there was a high probability of future economic benefit to the Shopper in the form of a tip.

131. At all times, Instacart had knowledge of the economic relationship formed between Plaintiffs and the customers.

132. At all times, Instacart acted intentionally and maliciously to disrupt the economic relationship between Plaintiffs and the customers by interfering with Plaintiffs' enjoyment of an expectancy of tips from customers.

133. Instacart's misappropriation of tips caused actual disruption of the economic relationship between Plaintiffs and the customers.

134. As a direct, proximate, and foreseeable result of Defendant's intentional acts and conduct, Plaintiffs have suffered, and will continue to suffer, economic injuries.

**COUNT V**

**COMMON LAW CLAIM**
**CONVERSION**

**(On Behalf of herself and
the Class)**

135. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

136. Tips are the property of the employees to whom they are paid. Thus, Plaintiffs had a right to possess the full amount of tips given to them by customers.

137. As alleged above, Defendants used portions of the gratuities paid by customers as a credit towards Plaintiffs' wages.

138. Defendants thus wrongfully and illegally took from Plaintiffs a portion of the tips given to them by customers.

139. Plaintiffs suffered economic harm in the amount of the tips misappropriated by Defendants.

## COUNT VI

## FRAUD/INTENTIONAL MISREPRESENTATION

**(On Behalf of herself and the Class)**

140. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein. Instacart represented to Plaintiffs that they would receive 100 percent of customer tips. However, Instacart actually used a portion of customer tips to supplement the wages Plaintiffs were paid for each batch. Since customers customarily tipped based on the order and before a Shopper had been assigned, Instacart was able to include the gratuity in its calculations in determining Plaintiffs' wages for a particular batch.

141. Instacart also represented to Plaintiffs that they, alone, were responsible for the performance of their work and that they, alone, determined the method, details, and means of performing their work. These representations were, in fact, false.

142. Instacart also represented to Plaintiffs that Plaintiffs were independent contractors not entitled to the compensation and reimbursements set forth above, which was,

in fact, also false.

143.    Instacart, at the time it made the representations set forth above, knew the falsehood of these representations and intended to, and did, induce Plaintiffs' reliance thereupon. Plaintiffs reasonably relied upon the truth of the aforementioned statements and representations in entering into and continuing in an employment relationship with Instacart according to the terms established by Instacart. Plaintiffs' reliance was a substantial factor in causing economic harm.

144.    As a direct, proximate and foreseeable result of Instacart's misrepresentations and fraudulent conduct, Plaintiffs suffered concrete and identifiable economic injuries, including but not limited to unpaid wages, including overtime.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, pray for judgment against Defendants as follows:

a)        An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class.

b)        For a declaratory judgment that the practices complained of herein are unlawful under appropriate state law, and that Plaintiffs and the putative class members are employees, and not independent contractors;

c)        For actual and compensatory damages;

d)        For restitution and disgorgement to the extent permitted by applicable law;

e)        For an order enjoining Defendants from continuing to engage in the conduct described herein;

f)        For civil and statutory penalties and liquidated damages available under applicable law;

g)        For pre-judgment and post-judgment interest;

h)        For an award of attorneys' fees, costs and expenses as authorized by

applicable law; and

     i)      For punitive damages according to proof;

     j)      For such other and further relief as this Court may deem just and proper.

## **<u>JURY DEMAND</u>**

   Plaintiffs demand a trial by jury on all causes of action so triable.

Respectfully submitted,


_s/ Michael L. Fradin_
LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
mike@fradinlaw.com
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228