**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| SHANDA BOLIN, on behalf of herself and all other plaintiffs similarly situated, known and unknown,<br><br>                      Plaintiffs,<br><br>   v.<br><br>MAPLEBEAR INC. D/B/A INSTACART and DOES 1 through 100, inclusive,<br><br>                      Defendants. | Case No. 2:20-cv-05945-SDM-CMV<br><br>District Judge: Hon. Sarah D. Morrison<br><br>Magistrate Judge: Hon. Chelsey M. Vascura |

## DEFENDANT'S MOTION TO DISMISS

Defendant Maplebear Inc. dba Instacart ("Instacart") respectfully moves this Court for an Order dismissing all claims alleged by Plaintiff in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is based on the Memorandum of Points and Authorities in support thereof, all pleadings and papers on file in this action, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing of this matter.

///

///

///

///

///

///

///

///

1616240

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: January 21, 2021

By: /s/ *Nancy M. Barnes*
One of Its Attorneys

Benjamin Berkowitz *(pro hac vice)*
Erin E. Meyer *(pro hac vice)*
Julia L. Allen *(pro hac vice)*
Donna Zamora-Stevens *(pro hac vice)*
Taylor Reeves *(pro hac vice)*
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188
bberkowitz@keker.com
emeyer@keker.com
jallen@keker.com
dzamora-stevens@keker.com
treeves@keker.com

Nancy M. Barnes (0074744)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
(216) 566-5786 tel.
Nancy.Bames@ThompsonHine.com

Attorneys for Defendant Maplebear Inc.
d/b/a Instacart

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

I.   INTRODUCTION

Defendant Maplebear Inc. dba Instacart ("Instacart") moves to dismiss[1] Plaintiff Shanda Bolin's Complaint because it fails to articulate cognizable legal theories and sufficient facts to support any of the claims Plaintiff seeks to assert against Instacart.

As explained below, Plaintiff has not pleaded any facts beyond a bare recitation of the statutory requirements that would allow the Court or Instacart to understand the factual basis for her federal unpaid overtime and minimum wage claims under the Fair Labor Standards Act ("FLSA"). Plaintiff's state-law claims for unpaid wages similarly fail as a matter of law, as claims asserted under Ohio's minimum wage law are subject to the same pleading requirements that apply to FLSA claims.

Plaintiff's claim under the Ohio Deceptive Trade Practices Act ("ODTPA") should also be dismissed, as the ODTPA is a trade regulation that proscribes misleading statements about the quality or origin of a good or service. It is not intended to cover allegations like those Plaintiff states here, and the Complaint does not come close to stating a claim under this statute.

Finally, Plaintiff's remaining common law claims for conversion, fraud, and tortious interference with prospective economic advantage fail because Plaintiff has not alleged facts sufficient to meet each element of those causes of action.

For these reasons, Plaintiff's Complaint should be dismissed in its entirety.

---

[1] Instacart concurrently filed a motion to compel individual arbitration of Plaintiff's claims. As explained in that motion, Plaintiff agreed to individually arbitrate her claims against Instacart. If the Court grants the motion to compel Plaintiff's claims to individual arbitration, the Court need not reach the merits of the Complaint and this Motion will be moot. Instacart only files this motion to dismiss to prevent any argument from Plaintiff that Instacart has waived its right to move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) if its motion to compel arbitration is denied. However, pursuant to the arbitration terms of the Independent Contractor Agreement to which Plaintiff affirmatively agreed, the arbitrator should resolve the merits of Plaintiff's claims.

## II. RELEVANT FACTS

Instacart is a San Francisco-based technology company that offers e-commerce software to retailers and operates a multi-sided technology and communications platform via the Instacart website and its smartphone application ("the Instacart app"). Instacart's technology and communications platform ("the Instacart platform") facilitates same-day, on-demand grocery shopping and delivery services in major metropolitan areas throughout the United States. Plaintiff Shanda Bolin is an independent contractor who registered with Instacart to be a "Shopper", *i.e.*, someone who is willing to receive customer requests for grocery shopping and delivery services via the Instacart app, and can choose whether she wants to accept and complete a customer's requested order.

Plaintiff brought this putative class action against Instacart on November 18, 2020, on behalf of herself and other Instacart Shoppers who performed services in the state of Ohio. Compl., Doc. No. 2, PAGE ID 60, ¶ 21. Plaintiff alleges that Instacart misclassified her and other Shoppers as independent contractors and denied them minimum wage, overtime payments, and work-related expense reimbursements in violation of federal and Ohio law. She also alleges that Instacart "misappropriated" gratuities in its calculation of Shoppers' pay. Plaintiff alleges that she has worked as an Instacart Shopper "from approximately May, 2020 to the present." Compl., Doc. No. 2, PAGE ID 56, ¶ 5. She alleges she "worked in excess of forty hours per week but was not compensated at the required overtime wage rates" and "regularly was not paid at or above the minimum wage for the . . . hours she worked." Compl., Doc. No. 2, PAGE ID 56, ¶ 5. Plaintiff brings claims under the FLSA (Count I), the Ohio minimum wage law (Count II), and the ODTPA (Count III), as well as the Ohio common law doctrines of tortious interference with prospective economic advantage (Count IV), conversion (Count V), and intentional misrepresentation (Count VI).

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts showing that her "right to relief [rises] above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S.

2

544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts must accept material factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  A plaintiff's claim must be described in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the court must dismiss a complaint.  *Iqbal*, 556 U.S. at 679; *see also Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) ("[T]o survive a motion to dismiss" under Rule 12(b)(6), "[a] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").

## IV. ARGUMENT

### A. Plaintiff Fails to State a Claim Under the FLSA.

#### 1. Plaintiff has not alleged sufficient facts to plead violations of the FLSA based on minimum wage and overtime pay requirements.

Plaintiff fails to state an FLSA claim for unpaid minimum and overtime wages because she has alleged no specific facts to meet the pleading requirements under *Twombly*.  "To state a *prima facie* case of entitlement to overtime pay under the FLSA, a plaintiff must allege that: defendants are engaged in commerce as defined by the FLSA; plaintiffs are employees as defined by the FLSA; and, as employees for defendants, plaintiffs were not paid minimum wage or that they worked more than forty hours per week and were not paid overtime compensation for the hours worked in excess of forty."  *Hutt v. Greenix Pest Control, LLC*, No. 2:20-CV-1108, 2020 WL 6892013, at *4 (S.D. Ohio Nov. 24, 2020); *see also Brown v. Allied Commc'ns Corp.*, No. 1:18-cv-689, 2020 WL 868207, at *5 (S.D. Ohio Feb. 21, 2020).[2]

---

[2] Instacart maintains that Plaintiff does not have an employment relationship with Instacart as defined by the FLSA.  However, this motion focuses on the lack of factual support for Plaintiff's allegations that she was not paid minimum wage or overtime payments.

3

While the Sixth Circuit "has not yet articulated a post-*Twombly* FLSA pleading standard,"[3] district courts within the circuit consistently demand more factual support than the threadbare allegations here. *See, e.g., Comer v. Directv, LLC*, No. 2:14-cv-1986, 2016 WL 853027, at *10 (S.D. Ohio March 4, 2016) (holding plaintiffs adequately pleaded an FLSA violation by "approximating their weekly hours" to show they were regularly not paid for work in excess of forty hours per week); *Bey v. WalkerHealthCareIT, LLC*, No. 2:16-CV-1167, 2018 WL 2018104, at *5 (S.D. Ohio May 1, 2018) (holding plaintiffs adequately pleaded FLSA claim by alleging they "were scheduled to work 45 hours per week, but were paid only their standard hourly rate even for hours worked beyond 40 in a workweek"); *Brown*, 2020 WL 868207, at *6 (holding plaintiff adequately pleaded FLSA claim by alleging "that he worked approximately 10 hours of overtime per week for the period of October 2017 and June 2018").

Here, Plaintiff has done nothing more than parrot the statutory elements of the FLSA, alleging only that she "worked in excess of forty hours per week but was not compensated at the required overtime wage rates" and "regularly was not paid at or above the minimum wage for the applicable jurisdiction for the hours she worked." Compl., Doc. No. 2, PAGE ID 56-57, ¶ 5. Beyond these "recitals of the elements of a [FLSA] cause of action," which are insufficient to state a claim, *see Iqbal*, 556 U.S. at 678, the Complaint provides no factual allegations about Plaintiff's actual hours worked or compensation received for services. She does not attempt to approximate her hours worked or the total compensation received for any given time period to

---

[3] *Brown.*, 2020 WL 868207, at *6. Other circuits, however, have adopted a heightened pleading standard for FLSA claims, requiring "plaintiffs to approximate the overtime hours worked or the amount of wages owed," and to "allege that [they] worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641, 644–45 (9th Cir. 2014); *see Hirst v. SkyWest, Inc.*, 910 F. 3d 961, 966 (7th Cir. 2018) ("[A] plaintiff alleging a federal minimum wage violation must provide sufficient factual context to raise a plausible inference there was at least one workweek in which he or she was underpaid."); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114–15 (2d Cir. 2013) ("[A] plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."). Instacart urges this Court to follow the approach adopted by these circuits and require Plaintiff to allege facts showing that she was not paid overtime or minimum wage in a given workweek.

support a plausible inference that she was ever underpaid. *See, e.g.*, *Comer*, 2016 WL 853027, at *10; *Bey*, 2018 WL 2018104, at *5; *Brown*, 2020 WL 868207, at *6. The Complaint provides no factual context, beyond mere conclusory statements, to plausibly state minimum wage and overtime claims under the FLSA. *Iqbal*, 556 U.S. at 678.

Plaintiff also alleges that Instacart failed to provide reimbursement for out-of-pocket expenses like vehicles and gas, Compl., Doc. No. 2, PAGE ID 67, ¶¶ 63–64, and that "[a]t times, these expenses caused Plaintiffs' wages to fall below minimum wage." Compl., Doc. No. 2, PAGE ID 67, ¶ 63. However, with no allegations whatsoever regarding the compensation Plaintiff received, the total compensable time she worked, or the amount of her alleged expenditures, this allegation does not allow "the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Indeed, the Complaint does not provide the Court with any facts to conclude that there was ever an occasion when the number of hours Plaintiff worked and the cost of expenses combined to reduce Plaintiff's average hourly rate below the minimum wage. Plaintiff's allegation that "some portion" of customer tips was credited toward Shopper earnings, constituting an illegal tip pool, *see* Compl., Doc. No. 2, PAGE ID 65, ¶ 54, is equally speculative, conclusory, and devoid of factual support to state a claim under the FLSA. For these reasons, Plaintiff's claim for violations of the FLSA's wage requirements (Count I) fails to meet *Iqbal*'s pleading requirements and should be dismissed.[4]

### 2. The FLSA provides no private right of action for failure to maintain records.

Plaintiff's first cause of action also alleges that Instacart "failed to record, report, or otherwise preserve records of hours worked by Plaintiffs sufficient to determine wages, hours, and other conditions and practices of employment." Compl., Doc. No. 2, PAGE ID 72, ¶ 89. To the extent Plaintiff seeks any recovery under the FLSA based upon alleged recordkeeping violations, this claim should be dismissed, or this theory of liability should be stricken from the

---

[4] Plaintiff's FLSA claim also necessarily fails under a heightened pleading standard for FLSA claims. *See supra* fn. 3.

Complaint under Federal Rule of Civil Procedure 12(f), because the FLSA does not provide a private right of action for violations of its recordkeeping requirements.

While the FLSA authorizes specific types of employee actions, including those for unpaid overtime or minimum wages, *see* 29 U.S.C. § 216(b), it does not permit actions for violations of the FLSA's recordkeeping requirements, *see* 29 U.S.C. § 217. The "[a]uthority to enforce the [FLSA's] recordkeeping provisions is vested exclusively in the Secretary of Labor." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F. 3d 832, 843 (6th Cir. 2002); *see also Comer*, 2016 WL 853027, at *12 (dismissing complaint to the extent it sought recovery for FLSA record keeping violations because such claims are not actionable). For these reasons, Plaintiff has no authority to enforce the FLSA's recordkeeping provisions, and her recordkeeping claim under the FLSA (Count I) must be dismissed or stricken from the Complaint.

### 3. Plaintiff fails to sufficiently plead a willful violation of the FLSA.

Plaintiff's FLSA claim should also be dismissed to the extent it seeks recovery beyond a two-year period for any individual because Plaintiff has failed to plead willfulness sufficient to trigger a three-year limitations period under the FLSA. *See* Compl., Doc. No. 2, PAGE ID 71, ¶ 81 (seeking relief under the FLSA for Plaintiffs "who have worked … any time during the *three-year period* prior to filing this Complaint") (emphasis added). "The statute of limitations for the FLSA is two years for non-willful violations and three years for willful ones." *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 605 (6th Cir. 2013). To establish willfulness, a plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "[A] plaintiff must do more than make the conclusory allegation that a defendant acted willfully." *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014); *see Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 893 (S.D. Ohio 2004) ("A willful violation requires that the employer acted recklessly, at least; it is not sufficient that the employer acted unreasonably.").

Plaintiff has not adequately pleaded a "willful" violation of the statute necessary to extend the FLSA's statute of limitations to three years. Rather, Plaintiff makes a conclusory assertion that Instacart "chose to misclassify" Shoppers and vaguely speculates that she "believe[s] … documents exist" to support this claim of willfulness. Compl. Doc. No. 2, PAGE ID 68, 70, ¶¶ 67, 75. Plaintiff also references an irrelevant statement by Instacart's CEO that has nothing to do with the classification of Shoppers as independent contractors, and from which no plausible inferences support a finding of willfulness. Compl., Doc. No. 2, PAGE ID 69-70, ¶ 74. These threadbare allegations do not come close to showing the actual knowledge or reckless disregard required to apply a three-year statute of limitations to Plaintiff's FLSA claims. *See Rowlett v. Michigan Bell*, No. 11-cv-1269, 2013 WL 308881, at *2 (W.D. Mich. Jan. 25, 2013) (adopting order dismissing FLSA claim as time-barred under two-year statute of limitations because "while Plaintiff makes the conclusory assertion that [Defendant] acted willfully, Plaintiff has failed to allege any facts which would establish such"). This is a further reason why Plaintiff's FLSA claim should be dismissed.

### B. Plaintiff Has Failed to State a Claim for Minimum Wage or Overtime Payments Under Ohio Law.

Plaintiff's claim under the Ohio Minimum Fair Wage Standards Act ("OMFWSA") suffers from the same deficiencies as her FLSA claim. Courts interpret the FLSA and OMFWSA "in a unitary fashion" because the statutes "parallel each other." *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 69 n.2 (6th Cir. 1997); s*ee also Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016) ("Because the FLSA and the OMFWSA have the same overtime requirements, the outcomes will be the same and the claims can be evaluated together."); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) (finding the OMFWSA "expressly incorporates the standards and principles found in the FLSA"). As explained in Section IV.A.1 *supra*, because Plaintiff has failed to provide any factual support regarding hours worked or compensation received to support her minimum wage and overtime

7

claims under the FLSA, her claims under the OMFWSA (Count II) should be dismissed for the same reasons.

**C. Plaintiff Fails to State a Claim Under the Ohio Deceptive Trade Practices Act.**

Plaintiff's third cause of action is for violation of the ODTPA. The ODTPA is "a trade regulation that is designed to protect the consuming public from confusion as to the origin or nature of good[s] and services." *Butler Cty. Comm'rs. v. Utility Serv. and Supply*, No. CV2001071492, 2005 WL 5106239 (Butler Cty. C.P., Jan. 31, 2005) (collecting cases showing the ODTPA "is applied to address confusion"). It is "substantially similar to Section 43(a) of the federal Lanham Act . . . and generally regulates trademarks, unfair competition, and false advertising." *Arlington Video Prods., Inc. v. Fifth Third Bancorp*, No. 2:08-CV-122, 2008 WL 1990355, at *2 (S.D. Ohio May 1, 2008).

"A deceptive trade practice occurs when a person, in the course of his business, vocation or occupation, '[d]isparages the goods, services, or business of another by false representations of fact.'" *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995). The Act proscribes thirteen specific trade practices related to representations or communications regarding goods or services.[5] The elements of an ODTPA claim are: "(1) a false statement or statement that is misleading, (2) which statement actually

---

[5] These include: (1) "pass[ing] off goods or services as those of another"; (2) "caus[ing] likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; (3) "caus[ing] likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another"; (4) "us[ing] deceptive representations or designations of geographic origin in connection with goods or services"; (5) "list[ing] a fictitious business name in a local telephone directory"; (6) "list[ing] a fictitious name in a directory assistance database"; (7) "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; (8) "represent[ing] that goods are original or new if they are deteriorated"; (9) "represent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another"; (10) "disparaging the goods, services, or business of another by false representation of fact"; (11) "advertis[ing] goods or services with the intent not to sell them as advertised"; (12) "mak[ing] false statements of fact concerning the reasons for, existence of, or amounts of price reductions"; and (13) "advertis[ing] goods or services with the intent not to supply reasonably expectable public demand." Ohio Rev. Code Ann. § 4165.02(A).

8

deceived or has the tendency to deceive a substantial segment of the target audience, (3) the deception is material in that it is likely to influence a purchasing decision, and (4) the plaintiff has been or is likely to be injured as a result." *Torrance v. Rom*, 157 N.E.3d 172, 188 (Ohio 8th Dist. App. 2020).

Plaintiff alleges that that Instacart violated the ODTPA by (1) "fail[ing] to provide Plaintiffs with accurate records of pay"; (2) "represent[ing] to Plaintiffs that they, alone were responsible for the performance of their work and that they, alone, determined the method, details, and means of performing their work"; and (3) "represent[ing] [that] Plaintiffs were independent contractors." Compl., Doc. No. 2, PAGE ID 77, ¶¶ 114–16. None of these alleged "representations" are actionable under the ODTPA, as none "[d]isparages the goods, services, or business of another by false representations of fact," *A & B-Abell Elevator*, 651 N.E.2d at 1294, and none would cause the "consuming public … confusion as to the origin or nature of good[s] and services." *Butler Cty. Comm'rs.*, 2005 WL 5106239. Indeed, they are not representations made to the public at all. This is precisely why Plaintiff does not specify which of the ODTPA's thirteen proscribed trade practices Instacart has allegedly violated; none of the proscribed trade practices are remotely analogous to the "representations" she has alleged.

Plaintiff also failed to plead the requisite elements of a cause of action under the ODTPA, including how any of the identified "representations" in the Complaint from Instacart to Shoppers "has [a] tendency to deceive a substantial segment of the target audience," and how any alleged representation could possibly be a material deception that "is likely to influence a purchasing decision." *Torrance*, 157 N.E.3d at 188. Indeed, the Complaint does not identify any "purchasing decision" that could plausibly have been influenced by any of the alleged representations. This disconnect between Plaintiff's allegations and the statutory elements further confirms that the ODTPA was not intended to address the misclassification claims underlying Plaintiff's third cause of action, and unsurprisingly, Instacart has found no case applying the ODTPA to worker misclassification claims. Accordingly, Plaintiff's third cause of action should be dismissed. *See Butler Cty. Comm'rs*, 2005 WL 5106239.

### D. Plaintiff Fails to State a Claim for Tortious Interference with Prospective Economic Advantage.

"The tort of interference with a business relationship occurs when a person, without privilege to do so, induces or otherwise purposefully causes a third person not to enter into or continue a business relationship with another."[6] *Gentile v. Turkoly*, 86 N.E.3d 991, 997 (Ohio 7th Dist. App. 2017). "The elements of tortious interference with a business relationship are: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Id*.

Plaintiff claims that by "credit[ing] customer tips against wages," Instacart purposefully interfered with the "economic relationship between Plaintiffs and the customers." Compl., Doc. No. 2, PAGE ID 79, ¶¶ 125, 132. But to state a claim for tortious interference, Plaintiff must also allege that "[t]he defendant . . . cause[d] a third person to refuse to continue doing business with the plaintiff." *Collins v. Allen*, No. 1:04-CV-572, 2005 WL 1073369, at *3 (S.D. Ohio Mar. 16, 2005), *report and recommendation adopted,* No. 1:04 CV 572, 2005 WL 1077591 (S.D. Ohio Apr. 21, 2005) (dismissing tortious interference with business relations claim when plaintiff did not allege "that a single third person ended its relationship with [him] as a result of" defendant's actions).

Here, Plaintiff does not allege that any Instacart customer ceased doing business with her, or any other Shopper, as a result of Instacart's alleged misconduct. Indeed, the interference Plaintiff alleges occurred *after* customers completed their transactions and paid for their orders. Plaintiff does not allege that Instacart attempted in any way to dissuade customers from tipping or placing orders on the Instacart platform, or that any conduct by Instacart had any impact on a

---

[6] "[C]ourts in Ohio use the term 'tortious interference with a business expectancy' and the term 'tortious interference with a business relationship' interchangeably. Ohio does not recognize the tort of wrongful interference with a business expectancy that is separate from tortious interference with a business relationship." *Coventry Grp., Inc. v. Gottlieb*, 7 N.E. 3d 611, 613 (Ohio Ct. App. 2014).

1616240

customer's decision "to continue doing business with the plaintiff." *Collins*, 2005 WL 1073369, at *3. Because the Complaint contains *no* allegations that Instacart induced customers to discontinue their business relationships with Shoppers, Plaintiff has failed to state a claim for tortious interference with prospective economic advantage. *See Klusty v. Taco Bell*, 909 F. Supp. 516, 524 (S.D. Ohio 1995) (holding that plaintiffs failed to state a claim for tortious interference when they did not allege "any independent inducement from [defendant] to third parties having business relationships with Plaintiffs to cease those business relationships").

**E. Plaintiff Fails to State a Claim for Conversion.**

"Conversion is an exercise of dominion or control wrongfully exerted over property in denial of or under a claim inconsistent with the rights of another." *Dice v. White Family Cos.*, 878 N.E.2d 1105, 1108–09 (Ohio 2nd Dist. App. 2007). Under Ohio law, the elements of a conversion claim are: (1) "plaintiff's ownership or right to possession of the property at the time of the conversion;" (2) "defendant's conversion by a wrongful act or disposition of plaintiff's property rights;" and (3) "damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996) (holding plaintiff failed to state sufficient facts to support conversion claim). "[A]n action for conversion of money will not lie unless identification [of specific money] is possible and there is an obligation to deliver the specific money in question." *Id.* ("[A] conversion of money occurs only where the money involved is 'earmarked' or is specific money capable of identification, such as money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered."). "An action for conversion also requires that the defendant have an obligation to deliver *specific* money as opposed to merely a certain sum of money." *Id.* at 81–82 (emphasis added).

Plaintiff claims Instacart committed conversion by crediting tips toward its calculation of Plaintiff's total earnings. This allegation fails to state a conversion claim for multiple reasons. *First*, Plaintiff does not allege that Instacart exercised "dominion or control" over her tips. *Dice*, 878 N.E.2d 1105, 1108–09. Rather, Plaintiff theorizes that Instacart "used the gratuity as a part of its calculation to determine an individual Shopper's rate of pay" for an order. Compl., Doc.

No. 2, PAGE ID 65, ¶ 54. In other words, Plaintiff does not dispute that she and other Shoppers received 100 percent of customer tips; she takes issue with how those tips were allegedly factored into Shoppers' total compensation. Since no tip amounts have been withheld by Instacart, this allegation does not support a claim for conversion.

*Second*, Plaintiff does not claim that Instacart assumed control of an identifiable sum that was "earmarked" or "sequestered" for specific purposes. *See NPF IV, Inc.*, 922 F. Supp. at 81. Plaintiff does not claim, for example, that Instacart withheld a certain portion of gratuity from each order, nor does she offer even a vague estimate or description of allegedly converted funds. For these reasons, Plaintiff's claim for conversion (Count V) should be dismissed. *Smith v. Boston Mut. Life Ins. Co.*, No. C–120668, 2013 WL 3148719, at *3 (Ohio 1st Dist. App. June 19, 2013) (holding trial court properly dismissed conversion claim when "[plaintiff] failed to identify any such segregated funds, but alleged only that [defendant] wrongfully refused to pay commissions owed" under a contract).

**F. Plaintiff Fails to State a Claim for Fraud or Intentional Misrepresentation.**

To state a cognizable claim for intentional misrepresentation,[7] a plaintiff must allege: "[1] a representation or, where there is a duty to disclose, concealment of a fact; [2] which is material to the transaction at hand; [3] made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; [4] with the intent of misleading another into relying upon it; [5] justifiable reliance upon the representation or concealment; and [6] a resulting injury proximately caused by the reliance." *Dooley v. Wells Fargo Bank, Nat. Ass'n*, 941 F. Supp. 2d 862, 867 (S.D. Ohio 2013). Federal Rule of Civil Procedure 9(b) requires a party asserting a fraud or a mistake claim to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The

---

[7] "The terms 'fraud' and 'intentional misrepresentation' have been used interchangeably by the courts in cases where an intentional misrepresentation of a fact forms the basis for a cause of action for fraud." *Applegate v. Northwest Title Co.*, No. 03AP–855, 2004 WL 585592, at *1 n.2 (Ohio 10th Dist. App. March 25, 2004).

1616240

heightened pleading standard under Rule 9(b) requires Plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of [defendant]; and the injury resulting from the fraud." *Dooley*, 941 F. Supp. 2d at 868 (holding plaintiff failed to state a misrepresentation claim "[b]y not specifically alleging the content, time, and place of the alleged statements" at issue).

Plaintiff alleges that Instacart made three fraudulent representations, each of which fails to state a claim under Rule 9(b). *First*, Plaintiff claims Instacart "represented to Plaintiffs that they would receive 100 percent of customer tips." Compl., Doc. No. 2, PAGE ID 80, ¶ 140. This conclusory statement falls well short of the heightened pleading standard, as Plaintiff does not provide even general details regarding the alleged misrepresentation, such as when, how, or to whom it was made. Moreover, Plaintiff's own version of the facts belie the alleged falsity of this statement. As discussed above, Plaintiff does not dispute that she received 100 percent of customer tips. Rather, she takes issue with how those tips were factored into her total payment calculation. *See* Compl., Doc. No. 2, PAGE ID 66, ¶ 54. Because Plaintiff's tip misappropriation claim does not meet the heightened pleading requirements of Rule 9(b), and Plaintiff's own allegations confirm that she received 100 percent of customer tips (which means there is no misrepresentation), this theory of fraud must be dismissed.

*Second*, Plaintiff alleges that Instacart "represented to Plaintiffs that they, alone, were responsible for the performance of their work and that they, alone, determined the method, details, and means of performing their work," Compl., Doc. No. 2, PAGE ID 80, ¶ 141. Like the allegations regarding tip misappropriation, the Complaint fails to include *any* details regarding when or how these alleged misrepresentations were made. Moreover, to the extent this alleged misrepresentation was made prior to Plaintiff providing any services on the Instacart platform (the Complaint does not say either way), such a representation is not actionable under a common law fraud theory. *Ettayem v. Land of Ararat Inv. Grp., Inc.*, 100 N.E.3d 1056, 1066 (Ohio 10th Dist. App. 2017) ("Generally, a representation concerning a future event will not support a fraud claim.").

13

*Third*, Plaintiff alleges that Instacart falsely represented to Plaintiffs that they were independent contractors. Compl., Doc. No. 2, PAGE ID 80, ¶ 142. In addition to lacking any details required under Rule 9(b), such as the when and how this alleged misrepresentation was made, this allegation also fails because "under Ohio law, a representation of law is an opinion and cannot form the basis of an action for fraud in the absence of a fiduciary relationship." *Lynch v. Dial Fin. Co. of Ohio No. 1*, 656 N.E.2d 714, 750 (Ohio 8th Dist. App. 1995); *see also Wojcik v. Shell Oil Company*, No.: 1:08 CV 1807, 2012 WL 13032962, at *10 (N.D. Ohio March 30, 2012) ("Inasmuch as this claim for fraudulent misrepresentation is premised on an omission of a legal opinion, Plaintiffs cannot establish fraud."). Any assertion by Instacart to Plaintiff that she is an independent contractor is a legal conclusion and cannot form the basis of a legally cognizable fraud claim.

For these reasons, the Court should dismiss Plaintiff's fraud claim in its entirety.

## V. CONCLUSION

For the foregoing reasons, Instacart respectfully requests that all claims alleged in Plaintiff's Complaint be dismissed.

///

///

///

///

///

///

///

///

///

///

///

1616240

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: January 21, 2021

By: /s/ *Nancy M. Barnes*
One of Its Attorneys

Benjamin Berkowitz *(pro hac vice)*
Erin E. Meyer *(pro hac vice)*
Julia L. Allen *(pro hac vice)*
Donna Zamora-Stevens *(pro hac vice)*
Taylor Reeves *(pro hac vice)*
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188
bberkowitz@keker.com
emeyer@keker.com
jallen@keker.com
dzamora-stevens@keker.com
treeves@keker.com

Nancy M. Barnes (0074744)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
(216) 566-5786 tel.
Nancy.Barnes@ThompsonHine.com

Attorneys for Defendant Maplebear Inc.
d/b/a Instacart

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2021, a copy of foregoing *Defendant's Motion to Dismiss* and *Memorandum of Law in Support of Motion* were filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Nancy M. Barnes*
Nancy M. Barnes
